**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| HO WAN KWOK, *et al.*,[1] | : | Case No. 22-50073 (JAM) |
| Debtors. | : | (Jointly Administered) |
| LUC A. DESPINS, CHAPTER 11 TRUSTEE, | : | |
| Plaintiff, | : | Adv. Pro. No. 24-05249 |
| v. | : | |
| ACA CAPITAL GROUP LTD., HIMALAYA INTERNATIONAL CLEARING LTD., HIMALAYA INTERNATIONAL FINANCIAL GROUP LTD., HIMALAYA INTERNATIONAL RESERVES LTD., HIMALAYA INTERNATIONAL PAYMENTS LTD., AND HIMALAYA CURRENCY CLEARING PTY LTD., *et al.*, | : | |
| Defendants. | | |

**LOCAL RULE 56(a)1 STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION OF CHAPTER 11 TRUSTEE FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Bankruptcy Procedure 7056 and Rule 7056-1 of the Local Bankruptcy Rules for the District of Connecticut, Luc A. Despins, as chapter 11 trustee (the "Trustee") for the estate of Ho Wan Kwok (the "Debtor" or "Kwok"), respectfully submits this statement of undisputed material facts (the "SUF") in support of his Motion for Summary

[1] The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

Judgment (the "Motion"), filed concurrently herewith. In further support of the Motion, the Trustee submits the *Declaration of Nicholas A. Bassett in Support of Motion of Chapter 11 Trustee for Summary Judgment* (the "Declaration"), filed concurrently herewith.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Himalaya International Clearing Ltd. ("HIC") was [redacted][2] Himalaya International Financial Group Ltd. ("HIFG") was [redacted].[3] Himalaya International Reserves Ltd. ("HIR") was organized under the laws of the BVI on November 9, 2020.[4] Himalaya International Payments Ltd. ("HIP") was organized under the laws of the BVI on January 5, 2021.[5] Himalaya Currency Clearing Pty Ltd. was organized under the laws of Australia on July 7, 2020 ("HCCP", and together with HIC, HIFG, HIP, and HCCP, the "Himalaya Entities").[6] Major Lead International Ltd. is the direct nominal shareholder of each of the Himalaya Entities,[7] and William Je ("Je") is the sole nominal indirect owner of each of the Himalaya Entities.[8]

## I. Criminal Court Judgment and Findings

2. On July 6, 2026, the court (the "Criminal Court" or "Judge Torres") in the Debtor's and Je's criminal case (the "Criminal Case") issued a judgment against the Debtor, finding him guilty on nine counts.[9]

---

[2] Trustee Ex. 420 at 1 (HIC0000565). All references to "Trustee Ex. " mean and refer to the Trustee's exhibits annexed to the Declaration.

[3] Trustee Ex. 421 at 1 (HImIntFinGrp0000001).

[4] Trustee Ex. 422 at 1 (HImIntReserves0000001).

[5] Trustee Ex. 423 at 1 (HImIntPayments0000003).

[6] Trustee Ex. 424 at 1 (HimCurrClearing0000001).

[7] Trustee Ex. 425 (HIC0000541); Trustee Ex. 426 (HImIntFinGrp0000033); Trustee Ex. 427 (HImIntPayments-0000035); Trustee Ex. 428 (HImIntReserves0000032); Trustee Ex. 478 (HimCurrClearing0000069).

[8] *See, e.g.,* Trustee Ex. 429, Trustee Ex. 430; Trustee Ex. 431. Je, together with ACA and the Himalaya Entities, are referred to as the "Defendants" and each a "Defendant."

[9] *Judgment*, 23-cr-00118, ECF 860 at 1-2 (S.D.N.Y.). Hereinafter citations to the Criminal Case refer to "Criminal Case ECF ." *Jury Verdict*, Criminal Case ECF 395.

3. On June 29, 2026, the Criminal Court sentenced the Debtor to 30 years imprisonment.[10] In the Criminal Case, the Government alleged, and proved, that the Debtor "created and maintained several interrelated and overlapping entities—i.e., the G Enterprise[,]"[11] and through the Debtor's organizing and controlling dozens of shell entities (including the G Enterprise), solicited and obtained funds for those entities, laundered such funds, spent those funds on luxury items, vehicles, and property for the benefit of himself and his family, and used those funds to promote, operate, and manage the G Enterprise.[12]

4. The issue of the Debtor's creation, maintenance, and control of the G Enterprise and other shell entities was litigated in the Criminal Case.[13] For example, in opposition to the Government's application seeking certain co-conspirator statements be admitted in evidence, the Debtor argued that "there is a commercial and social relationship between Mr. Je and [the Debtor]."[14] He also argued in his sentencing submission that he had no ownership or control over the Himalya Exchange or ACA and that Je acted independently from him.[15]

5. The Criminal Court "overrule[d] Mr. Guo's claim that he did not play an organizing or leadership role in the crimes of conviction. Witnesses testified that Mr. Guo was the 'top boss,' . . . and that he would have the final say. [. . .] Indeed, the jury convicted Mr. Guo of Count One, which alleged that he was the leader of, and directed, the G Enterprise." (*Guo Sentencing*, Criminal Case ECF 864 at 35:14-22). *See also* (*id.* at 82:15-22 ("Mr. Guo was known as 'Boss' and was in control of the G Enterprise entities. [. . .] Mr. Guo was ultimately the boss and had the final say.")).

6. The "interrelated and overlapping" G Enterprise entities included, "ACA Capital

---

10 *Guo Sentencing*, Criminal Case ECF 864 at 87:4-8 (internal pagination).
11 *Superseding Indictment*, Criminal Case ECF 307 ¶ 3.
12 *Compare Superseding Indictment*, Criminal Case ECF 307 ¶ 3, *with* Judgment, Criminal Case ECF 860 at 1-2.
13 *Guo Sentencing*, Criminal Case ECF 864 at 80:8-14.
14 *Letter Opposition*, Criminal Case ECF 383, at 10.
15 *Sentencing Mem. of Miles Guo*, Criminal Case ECF 826 at 1, and 826-1, at 89-91, 94, 95, and 98.

Group Limited [("ACA")], . . . Freedom Media Ventures Limited, . . . Hamilton Capital Holding Limited, Hamilton Investment Management Limited, Hamilton Opportunity Fund SPC, . . . the Himalaya Exchange, . . . Himalaya Currency Clearing Pty Ltd., Himalaya International Clearing Limited, Himalaya International Financial Group Limited, Himalaya International Reserves Limited . . . Major Lead International Ltd. . . . , among others." (*Superseding Indictment*, Criminal Case ECF 307 ¶ 3(a.)).

7. Je was a co-defendant in the Criminal Case charged with participating in the Debtor's fraud. (*See Superseding Indictment*, Criminal Case ECF 307 ¶ 3). Although Je was not apprehended and did not attend the trial, he appeared in the Criminal Case through counsel. (*Notice of Appearance,* Criminal Case ECF 771 and ECF 772).

## II. Debtor's Relationship with ACA

8. This Court previously found in its summary judgment decision in *Despins v. Taurus Fund LLC, et al* [Adv. Proc. No. 23-05017, ECF No. 172] (the "Taurus Decision") that Je, the ultimate nominal owner of the Debtor's adjudged alter ego Taurus Fund LLC (as well as the Defendants), was "a close associate of the . . . Debtor who serves as his 'finance person'".[16]

9. This Court determined that Je, "'would handle the investments and financing for' the Individual Debtor."[17] This Court recognized that, "in the Criminal Action, the [Debtor], through his counsel, stated '[Je] was the finance guy. He's a well-regarded investment banker who had managed the fortune not just of the Guo family fund but he had managed the fortunes of many other companies[;]'"[18] and "[i]n voice recordings introduced into evidence during the trial in the Criminal Action, Mr. Je, when referencing the [Debtor], called him the 'principal.'"[19]

---

16 Taurus Decision at 60.
17 *Id.* at 16, 44.
18 Taurus Decision at 44.
19 *Id.*

10. Sasha Gong testified that in 2018 Kwok, through his assistant, Yvette Wang ("Wang"), invited Gong to a lunch at his residence in the Sherry Netherland hotel, where Kwok introduced her to Je, stating "[t]his is William Je, my money man," which Je affirmed by nodding.[20]

11. In a recording of a July 2022 meeting of Kwok with the "Iron Blood Group," comprised of Kwok's top lieutenants and loyal followers, at the highest level of Kwok's Himalaya Alliance/New Federal State of China organization (the "Iron Blood Group"), Kwok commented about the notion that Je owned the Himalaya Exchange: "William with his own company? You're joking. William is only representing me."[21] Kwok stated that any statement that Je might own the Himalaya Exchange was "absurd" and Kwok described those making such a suggestion as "hav[ing] something wrong with your brain . . . [who] should slap yourself after saying that."[22]

12. The Debtor described himself as Je's boss, and Je as his representative,[23] and Je referred to the Debtor as "boss," "the principal," or "big brother."[24]

13. Karin Maistrello ("Maistrello"), Kwok's aide and translator from 2018-2020, testified that Je was Kwok's "friend and finance person," who "would handle investments and financing for boss."[25] Maistrello said that Je "reported to" the Debtor, explaining that: "[The Debtor] has money, and he asks [Je] to manage that money." Thus, though Je "is not [the Debtor's]

---

20 Trustee Ex. 18, Gong Dep. Tr. at 20:22-21:24, 23:3-21.

21 Trustee Exs. 14, 15, and 1, Ex. 10B to Li Deposition (YouTube Video) (CTRL00550333); Certified Translation of Ex. 10B to Li Deposition (CTRL00550412) at 5; Li Dep. Tr. at 95:14.

22 Trustee Exs. 14 and 15, Ex. 10B to Li Deposition (YouTube Video) (CTRL00550333); Certified Translation of Ex. 10B to Li Deposition (CTRL00550412) at 6.

23 Trustee Exs. 14, 15, and 1, Ex. 10B to Li Deposition (YouTube Video) (CTRL00550333); Certified Translation of Ex. 10B to Li Deposition (CTRL00550412) at 5; Li Dep. Tr. at 95:16.

24 *See e.g.,* Trustee Ex. 59, (CTRL00520186) (July 13, 2018 e-mail to general counsel of Golden Spring (New York) Limited, Daniel Podhaskie, referring to Debtor as "the principal"); Trustee Ex. 432, (WilliamJe0005431) ([redacted]); Trustee Exs. 22 and 23 (May 6, 2021 recorded phone call (and transcription and translation) among Je, Kwok, and Khaled wherein Je refers to Kwok as "the principal" and "big brother," and Je acknowledged Khaled's reference to Kwok as "the boss").

25 Trustee Ex. 24, Maistrello Dep. Tr. at 45:9-23.

employee . . . . He's managing [the Debtor's] money. So [Je], after managing [the Debtor's] money is going to report back to [the Debtor]."[26] Referring to the Debtor's offices where Je and the Debtor's employees worked, Maistrello testified that "everything that happened in the office by [Je]" was done for the Debtor, and after Je did something, "he would go back to [the Debtor] to report whatever it was."[27]

14. Maistrello also testified that (a) Je reported to the Debtor about real estate the Debtor was contemplating purchasing[28]; (b) based on her experience and observations witnessing "hundreds" of interactions between the Debtor and Je,[29] she understood Je "was subservient" to the Debtor; (c) when the Debtor spoke to Je about financial matters, the Debtor "wasn't asking for advice, he was telling [Je] to do things"[30]; and (d) one of the tasks done by her and others, including Je, was to write emails for the Debtor because he would never communicate by email himself.[31]

15. Valerie Stevens of the law firm of Hodgson Russ LLP, which represented the Debtor in various corporate and litigation matters from 2018-2020,[32] testified, with respect to her general corporate representation involving entity formation and basic commercial agreements, that "she came to understand that Mr. Je worked for [the Debtor],"[33] and that "entities Mr. Je asked me to create were, in fact, being asked to be created at the direction of [the Debtor]."[34] Stevens testified she "generally understood Mr. Je to be an agent or representative of [the Debtor]."[35]

16. Ya Li, a former member of the Debtor's Iron Blood Group,[36] testified that she

---

[26] *Id.*
[27] Trustee Ex. 24, Maistrello Dep. Tr. at 162:7-18.
[28] *Id.* at 163:8-164:14.
[29] *Id.* at 176:8-17.
[30] *Id.* at 174:25-175:5.
[31] *Id.* at 35:6-25 (noting that Je, among others, would write e-mails on behalf of the Debtor).
[32] Trustee Ex. 28, Stevens Dep. Tr. at 17:8-18:21.
[33] *Id.* at 229:6-230:5.
[34] *Id.* at 98:13-99:5.
[35] *Id.* at 93:5-12.
[36] Trustee Ex. 1, Li Dep. Tr. at 43:13-25.

understood Je to “work for Miles Guo to manag[e] his money” and monies obtained by the Debtor through the G Enterprise entities.[37] She also testified that Je worked for the Debtor by setting up the Himalaya Exchange platform and to assist in the transfer of funds to the “Hamilton Fund.”[38]

17. In 2017, the Debtor personally retained the law firm Foley Hoag LLP (“Foley Hoag”) to represent him in various matters, including [redacted] Foley Hoag’s time records from its representation of the Debtor include [redacted][40] [redacted]

18. On June 17, 2018, Valerie Stevens emailed Je with formation documents for Saraca.[42] In her June 2026 deposition, when asked why she worked with Je to form Saraca, Stevens responded: “I generally understood [Je] to be an agent or representative of [the Debtor].”[43]

19. During the period of at least March through June 2018, Je communicated with the Debtor’s real estate agent, Kathy Sloane, on the Debtor’s behalf.[44] Sloane noted that [redacted]

---

[37] *Id.* at 66:2-14. *See also id.* (“when we do the investment, Miles Guo sometimes will ask us to contact William for the details.”); *id.* at 66:15-67:2 (“for the farm loan program, we send the money to ACA Capital. And . . . at the same time we need to contact William from the email. We have to supply . . . all this information we send to William.”).

[38] *Id.* at 67:3-17.

[39] Trustee Ex. 433, (FOLEYHOAG-0000208).

[40] Trustee Ex. 434, (FOLEYHOAG-0000061). Amended Default Judgment ¶ 1 (AP 24-05318, Docket No. 140) (finding Saraca was Debtor’s alter ego at all times).

[41] *Id.*

[42] Trustee Ex. 28, Stevens Dep. Tr. 100:4-101:17.

[43] *Id.*

[44] *See, e.g.,* Trustee Ex. 435, (BHS_KS 0108) (March 29, 2018 e-mail regarding Sherry Netherland Apartment); Trustee Ex. 436, (BHS_KS 0106) (March 31, 2018 e-mail regarding the same); Trustee Ex.437, (BHS_KS 0105) (April 23, 2018 e-mail regarding additional real estate and noting “Miles agreed to this 2 weeks ago”).

[redacted][45]

In emails dated June 9 and June 10, 2018, Sloane asked Je to sign an "NDA agreement" in connection with the contemplated sale of the Sherry Netherland Apartment. Je, using his Gmail address, responded "OK. Pls print out the copy for signature."[46]

20. On March 16, 2018, Valerie Stevens of Hodgson Russ emailed Je stating that she "understand[s] the purchase is moving forward" and asking "who the client should be."[47] Je responded, using his ACA email account, stating: "The client will be the new BVI Company to be set up by you. ACA will pay for the legal fees before the BVI Company is established."[48] Je followed up the next day: "I was just been informed by Mei Guo (the purchaser) that she wants to put the purchase on hold. I will let you know if she decides to go ahead again… We are in constant search of properties in NYC and will definitely work together."[49] Stevens testified Je was assisting Mei Guo, the Debtor's daughter, with this purchase "[b]ecause he generally assisted the family with business matters."[50]

21. Maistrello testified that when the Debtor "wanted to purchase property, a new property, he would tell William to go see it, go speak with the . . . owner" and "William would do it," and then report back to the Debtor regarding how things went. [51]

22. On June 7, 2020, Steve Bannon emailed Je regarding the Debtor's purchase for Bannon's use of a house located at 354 Nod Hill Rd, Wilton, CT 06897 (the "Nod Hill Property"), writing: "They [i.e., the sellers] would accept $1.475 million now as long as I can close in 3 to 4 weeks. All we have to do now is show that we have the funds to close. This is close to miles and

45 Trustee Ex. 437, (BHS_KS 0105).
46 *Id.*
47 Trustee Ex. 41, Stevens Dep. Ex. 22.
48 Trustee Ex. 41, Stevens Dep. Ex. 22.
49 *Id.*
50 Trustee Ex. 28, Stevens Dep. Tr. at 107:14-21.
51 Trustee Ex. 1, Maistrello Dep. Tr. at 163:8-23.

let's me build a studio in the guest house for broadcasting plus is remote so I have security. Can I connect you to my real estate agent who will handle everything."[52] In response, Je wrote "Sir, Yes, please. I am copying Yvette who could provide evidence of funding for Golden Spring. Thanks."[53] This Court found: "On July 30, 2020, Leading Shine NY Ltd transferred $1,475,000.00", which "funds were used to purchase [the Nod Hill Property]. On August 3, 2020, Rule of Law Society transferred $1,475,909.25 to Leading Shine NY Ltd . . . ."[54] Leading Shine NY Ltd and Rule of Law Society are both adjudged alter egos of the Debtor.[55]

23. On April 1, 2020, the Debtor's counsel Aaron Mitchell ("Mitchell") sent an email to lawyers at the firm of Wachtel Missry LLP ("Wachtel"), counsel to GTV Media Group Inc. ("GTV") and Saraca.[56] Mitchell wrote, "I want to introduce you to William Je and Yvette Wang. Yvette and William are the representatives for Saraca Media and Guo Media."[57]

24. On April 5, 2020, Je sent Wachtel attorneys an email with "a brief presentation of the GTV," and asked about "ways to do the deal[.]"[58] On April 7, 2020, Je emailed the Wachtel attorneys that: "We . . . have decided to do the private placement without any general solicitation. Instead, Mr. Miles Guo, being the sponsor and the main host of the GTV programmes, will contact his friends in his personal WhatsApp Directory."[59]

25. [redacted].[60]

26. In email correspondence with Steele Schottenheimer, managing director of investor

---

52 Trustee Ex. 48, (GXSW133).
53 *Id.*
54 *Mem. of Decision and Order,* Adv. Proc. No. 23-05023, ECF 136 at 23.
55 *See Judgment,* Adv. Proc. No. 23-05023, ECF 138; *Order,* Adv. Proc. No. 24-05249, ECF 177.
56 Trustee Ex. 439, (JointExchangeDefendants0020007).
57 *Id.*
58 *Id.*
59 *Id.*
60 Trustee Ex. 440, (JointExchangeDefendants0025474).

relations at Hayman Capital Management, Je (using his ACA email address) received investment solicitation materials of Hayman Opportunity Fund Hong Kong L.P. ("Hayman"), and responded that "we are reviewing the documents," and that Saraca was the "onshore investment vehicle" that would invest $100 million.[61] Je sent Saraca's KYC documents (signed by Wang), noting that "we will arrange the remittance."[62]

27. On August 22, 2020, Kyle Bass of Hayman emailed Je at his ACA email address, stating that "Hayman needs to receive a representation from you and Saraca's lawyers regarding the specific source of this money," specifically "that it is a bona fide investment made by Saraca and Miles [i.e., the Debtor]."[63] Bass also asked Je to "[p]lease discuss this with Miles [i.e., the Debtor] and respond as soon as possible."[64] Bass attached a letter agreement for Je to sign for Saraca providing, among other things, for the withdrawal of $70 million of the $100 million Saraca invested with Hayman.[65]

28. This Court found in the Taurus Decision that "Hamilton Opportunity Fund paid the deposit and closing costs for the purchase of the Mahwah Mansion" and "transferred additional funds used to pay, among other things, invoices relating to the renovation of Mahwah Mansion."[66]

29. Ya Li testified that the Debtor directed her to transcribe and translate his WhatsApp voicemail to "Anron" (whom Li believed to be the Debtor's counsel Aaron Mitchell) that contained a detailed offer from the Debtor to purchase the Mahwah Mansion, including the instruction to "Please contact William, and use that fund to buy this."[67] This Court also found that Ya Li "testified she understood the Individual Debtor's reference to 'William' was a reference

---

[61] Trustee Ex. 441, (HHKOOF-00002326).
[62] Trustee Ex. 49, (GXHN57).
[63] Trustee Ex. 50, (GXHN208).
[64] *Id.*
[65] *Id.*
[66] Taurus Decision at 33-34.
[67] Taurus Decision at 19.

to Mr. William Je."[68]

30. Mei Guo, the Debtor's daughter and nominal owner of the Debtor's adjudged alter ego (and titleholder to the *Lady May*) HK International Funds Investments (USA) Ltd. ("HK USA"),[69] testified that on April 13, 2022, Mitchell called her regarding the potential need to post a $37 million bond, after which she called Je, whom she described as "Uncle William . . . a family friend we've known for many, many years."[70] Mei Guo testified that during this phone call she requested from Je a loan of $37 million and Je "agreed very quickly."[71]

31. Maistrello testified that Je had a desk and worked from the Debtor's offices in New York, first at 800 Fifth Avenue and then at 162 East 64th Street.[72] Maistrello testified that she witnessed "hundreds" of interactions between Kwok and Je at Kwok's offices at 162 East 64th Street in New York while working for the Debtor in 2018-2020.[73] Je referred to 162 East 64th Street as the address of "my office" and "my NY office" in emails with the Debtor's counsel.[74]

32. At the Debtor's deposition in March 2023, the Debtor was asked, among other things, whether: (i) Je was the Debtor's agent in connection with his business dealings; (ii) any actions taken by Je in connection with business dealings were taken at the Debtor's direction or under the Debtor's control and (iii) any assets or entities purportedly under the control of Je were actually under the Debtor's control. In response to each question, the Debtor asserted the Fifth Amendment.[75] In response to each question, the Debtor asserted the Fifth Amendment.[76] The Debtor repeated this refusal to answer in his *Declaration in Response to the Written Deposition*

68 Taurus Decision at 20.
69 *See Mem. of Decision and Order,* Adv. Proc. 22-05003, ECF 221.
70 *See* Mei Guo Dep. Tr., at 188:5-23 (Main Case Doc 1529).
71 *Id.* at 189:5-25.
72 Trustee Ex. 24, Maistrello Dep. Tr. at 18:22-25.
73 Trustee Ex. 24, Maistrello Dep. Tr. at 176:8-17.
74 Trustee Ex. 442, (CTRL00527588).
75 Trustee Ex. 51, Debtor's March 2023 Deposition Transcript, at 40-41.
76 *Id.*

*Questions of the Trustee*, dated July 8, 2026, wherein the Debtor asserted his Fifth Amendment rights and declined to answer the questions posed to him regarding Je.[77]

33. ACA failed to produce any tax returns or financial statements in (with the exception of one consolidated ACA financial statement for the year 2017).[78]

### A. Witness Testimony Regarding Debtor and ACA

34. Ya Li testified that she came to understand in her dealings with the Debtor that he controlled a number of companies she and other followers of the Debtor referred to as "headquarter companies," which she understood to be "Guo's entities."[79] Li testified that ACA was one of these entities, explaining that the Debtor asked Li and other Iron Blood Group members to send money they had collected from the Debtor's supporters to ACA.[80]

35. Valerie Stevens testified that she "viewed ACA as similar to the other entities that were formed on behalf of [the Debtor]."[81] Stevens testified that her understanding was based on "the two years of work we did with Yvette and William Je. Over time it became more clearer in meetings and phone calls and emails that Mr. Je was acting as an advisor to Mr. Guo."[82]

### B. ACA's Staff

36. Wang was purportedly employed by ACA as its director of business operations, as demonstrated by her ACA business card[83] and a January 2017 letter from ACA to DBS Bank certifying her employment details including her employment by ACA beginning in January 2016 (the "Wang Letter"), each of which were recovered in the FBI's search of Wang's apartment.[84]

---

77 Trustee Ex. 52, Debtor Responses to Written Questions at ¶¶ 48-53.
78 Trustee Ex. 71, Declaration of Adam Lomas.
79 Trustee Ex. 1, Li Dep. Tr. at 45:20-46:1, 128:18-129:6, 164:2-5.
80 *Id.* at 64:5-18.
81 Trustee Ex. 28, Stevens Dep. Tr. at 28:18-29:18.
82 *Id.* at 111:10-21.
83 Trustee Ex. 53, (GXWA66).
84 Trustee Ex. 54, (GXWA110).

37. This Court has already found that (i) "[t]he Debtor has control over Ms. Wang," "has employed [her] for several years, and has directed her to take actions on his behalf" [85]; (ii) Wang was "a top manager for the [Debtor] who, among other things, oversaw management and operations of many of the [Debtor's] shell companies at the [Debtor's] offices at 162 East 64th Street, New York, New York";[86] and (iii) the Debtor's adjudged alter egos Golden Spring, Lamp Capital, HCHK Technologies, Inc. ("HCHK Tech"), HCHK Property Management, Inc. ("HCHK Property"), and Lexington Property and Staffing Inc. ("Lexington") were "entities which employed the [Debtor's] personal assistants and staff under the direction of Ms. Wang."[87]

38. In 2016, Wang referred to the Debtor as "my boss" in email correspondence.[88] Witness testimony provides that Wang was the Debtor's "right hand,"[89] "close advisor"[90] and "agent,"[91] and "assistant."[92] The Debtor invoked the Fifth Amendment when asked whether Wang was his employee and agent.[93]

39. Fiona Yu was employed as ACA's director of legal and compliance, according to her business card.[94] Yu referred to the Debtor as "my Principle [*sic*]"[95] and communicated on the Debtor's behalf with the Debtor's counsel, Boies Schiller.[96] Correspondence addressed to Yu at the Hong Kong address used by ACA and other of the Debtor's companies provides that Yu worked for the Debtor in connection with (i) arbitration proceedings against Leading Shine

85 *Order Granting Motion to Hold Debtor in Contempt of Corporate Governance Order* [Main Case Docket No. 1372] ¶ 4.
86 Taurus Decision at 16.
87 Taurus Decision at 17.
88 Trustee Ex. 443, (BHS_KS 0120); *see also* Trustee Ex. 55, (AC0044892).
89 Trustee Ex. 24, Maistrello Dep. Tr. at 17:9-17.
90 Trustee Ex. 28, Stevens Dep. Tr. at 35:2-6.
91 *Id*. at 229:6-230:5.
92 Trustee Ex. 18, Gong Dep. Tr. at 17:11-24.
93 Trustee Ex. 52, Debtor's Responses to Written Questions ¶¶ 36, 37.
94 Trustee Ex. 57, (TPBL_004895).
95 Trustee Ex. 444, (BHS_KS 1122).
96 Trustee Ex. 445, (BSFPROD_008404).

Limited ("Leading Shine BVI"),[97] and (ii) corporate matters related to Leading Shine BVI, Whitecroft Shore Limited ("Whitecroft"),[98] and Kingdom Rich Limited ("Kingdom Rich").[99] Yu submitted an affidavit to a New York state court in support of the Debtor's motion to dismiss a complaint in which she referred to herself as the [redacted][100] The Debtor invoked the Fifth Amendment when asked if Yu was his employee and agent.[101]

40. Chassot served as the Debtor's Swiss counsel in connection with disputes related to an Airbus jet aircraft once held by the Debtor through Well Origin Limited, a company of which the Debtor was the sole shareholder.[102] Chassot referred to the Debtor as "the Principal" in correspondence.[103]

41. Maistrello testified that the Debtor installed her as the president and treasurer of the Rule of Law Society, his adjudged alter ego, of which she testified he was in charge.[104] Maistrello testified that, during the period in which she served as director of ACA, she simultaneously worked for Golden Spring, performed tasks for other entities, such as Saraca, and served as a director, president, and treasurer at the Rule of Law Society.[105] Maistrello characterized her role as being a "good puppet" of the Debtor, while at all times understanding he was her ultimate "boss".[106] Maistrello testified that although she was officially appointed as a director of ACA, she "didn't do

---

[97] Trustee Ex. 62, (SCAN00022154) (Kingdom Rich invoice directed to Fiona Yu); *see also* Amended Default Judgment ¶ 17 (AP 24-05318, Docket No. 140) (finding ownership interests in Leading Shine BVI held under the name of Qiang Guo, and Leading Shine BVI's Assets, are and were at all relevant times property of the Debtor or the Estate).

[98] *See* Mem. of Decision and Order Granting in Part Mot. For Summary Judgment, at 33 (AP No. 23-05008, Docket No. 126) ("The Court concludes the Individual Debtor beneficially owns and controls Whitecroft").

[99] Trustee Ex. 63, (SCAN00023739) (Kingdom Rich invoice directed to Fiona Yu); *see also* Default Judgment ¶ 24 (AP 24-05322, Docket No. 106)

[100] Trustee Ex. 446, (Francis-Tr0045998).

[101] Trustee Ex. 52, Debtor's Responses to Written Questions ¶¶ 43, 44.

[102] Trustee Ex. 58, (AC0056444).

[103] Trustee Ex. 59, (CTRL00520186).

[104] Trustee Ex. 24, Maistrello Dep. Tr. at 20:2-21:17.

[105] *Id.* at 148:24-150:4.

[106] Trustee Ex. 24, Maistrello Dep. Tr. at 20:2-21:17.

anything" at ACA and had no experience as a corporate director.[107] Maistrello testified that in 2019, when Maistrello received a subpoena to be deposed in connection with the *Eastern Profit v. Strategic Vision* litigation as a director of ACA, she gave the subpoena to Daniel Podhaskie, counsel to the Debtor and Golden Spring, and informed Wang about the subpoena.[108] Wang then arranged for lawyers to represent Maistrello in connection with the deposition.[109] Maistrello testified that after the deposition, she discussed the deposition with Wang and the Debtor, not Je.[110]

**C. ACA's Hong Kong Address**

42. In addition to ACA, 49/F, Bank of China Tower, No. 1 Garden Road, Hong Kong (the "Hong Kong Address") has been used by the Debtor on the register of directors and register of members of Genever Holdings Corporation,[111] China Golden Spring Group (Hong Kong) Limited ("China Golden Spring"),[112] Whitecroft,[113] Eastern Profit Corporation Limited ("Eastern"),[114] Leading Shine BVI,[115] Anton Development Limited ("Anton"),[116] Bravo Luck Limited ("Bravo Luck"),[117] and Kingdom Rich.[118]

**D. Transfers of ACA Funds**

---

107 *Id.* at 52:3-53:23.
108 Trustee Ex. 24, Maistrello Dep. Ex. 1 at 463:15-23.
109 *Id.* at 464:1-8.
110 *Id.* at 464:9-10, 465:7-18
111 Trustee Ex. 40, (HR0144130) Stevens Dep. Ex. 21; *see also* Trustee Ex. 28, Stevens Dep. Tr. at 102:10-103:25.
112 Trustee Ex. 60, (SCAN00013565) (China Golden Spring organization chart); *see also* Amended Default Judgment ¶ 15 (Adv. Proc. 24-05318, ECF 140).
113 Trustee Ex. 61, (SCAN00023763) (corporate records of Whitecroft maintained at Debtor's address) at 8; *see also Mem. of Decision and Order Granting in Part Mot. For Summ. Judgment*, Adv. Proc. 23-05008, ECF 126 at 33.
114 Trustee Ex. 447, (EASTERN-000382) (Eastern Profit 2016 Annual Return); *see also* Amended Default Judgment ¶ 19 (Adv. Proc. 24-05318, ECF 140).
115 Trustee Ex. 448, (SCAN00025705) (June 11, 2018 letter addressed to Fiona Yu with respect to Leading Shine's arbitration); Amended Default Judgment ¶ 17 (Adv. Proc. 24-05318, ECF 140).
116 Trustee Ex. 449, (ACASS00000019) (aircraft management agreement including same address); Amended Default Judgment ¶ 18(Adv. Proc. 24-05318, ECF 140).
117 Trustee Ex. 450, (UBS00172) (Bravo Luck UBS 2017 statement including same address); Amended Default Judgment ¶ 16 (Adv. Proc. 24-05318, ECF 140).
118 Trustee Ex. 62, (SCAN00022154) (Kingdom Rich Limited using same address); *see also* Trustee Ex. 63, (SCAN00023739) (same); Summary Judgment Decision (Adv. Proc. 22-05003, ECF 183) (finding that Lady May II is property of the Debtor's estate).

43. According to available records, between May 2015 and October 2023 ACA received transfers of approximately $447 million.[119] Of this amount, approximately $70 million[120] was transferred to ACA by companies with respect to which the Trustee has obtained Alter Ego Judgments[121] or asserted pending Alter Ego Claims,[122] namely Hamilton Opportunity Fund (a total of $63,232,732.00),[123] G Fashion (a total of $4 million),[124] Golden Spring (a total of $2 million),[125] and Leading Shine NY (a total of $625,000.00).[126]

44. Approximately $161 million was transferred to ACA by followers of the Debtor, in connection with the Farm Loan Program, which is one of the fraudulent schemes that the Debtor promoted and was later convicted for.[127] These transfers to ACA came either from followers' personal bank accounts or the bank accounts of companies owned by certain of these followers.[128] Moreover, Wang and Je transferred $5 million, in the aggregate, to ACA.[129]

45. Ya Li testified that the Debtor "told us to send money to" ACA and other "headquarter companies."[130] Li testified that:

a) The Farms were "created' by the Debtor, and the Debtor asked that each Farm set

---

[119] Trustee Ex. 65, ACA Summary Demonstrative Regarding Bank Account and Transfer Information (Adam Lomas (Kroll, LLC)), at 1 (Inflows). References to "Lomas ACA Transfer Summary" mean and refer to Trustee Ex. 65.

[120] *Id.* at 8 (Summary Inflows by Category of Sender).

[121] "Alter Ego Judgments" means and refers to rulings in the Trustee's favor with respect to the Trustee's Alter Ego Claims (as defined below).

[122] Pending "Alter Ego Claims" means and refers the Trustee's claims alleging numerous shell entities are the Debtor's alter egos and/or that such shell entities and their assets are beneficially owned by the Debtor, or similar claims under applicable law.

[123] Lomas ACA Transfer Summary, at 4 (Line 2).

[124] *Id.* at 4 (Line 13).

[125] *Id.* at 5 (Line 27).

[126] *Id.* at 5 (Line 52).

[127] Trustee Ex. 66, (GXC40); Trustee Ex. 67, (GXC40-V). *Jury Verdict*, Criminal Case ECF 395. Trustee Ex. 1, Li Dep. Tr. at 29:15-30:25.

[128] *See* Trustee Ex. 68, (1B71A – 3 ACA___2022.6.1) (Wang Excel spreadsheet); Trustee Ex. 69, (Certified translation of 1B71A – 3 ACA___2022.6.1); Trustee Ex. 1, Li Dep. Tr. at 38:24-39:24 (identifying May Wind Trading, Mountain of Spices, Himalaya Korea Farm Company, and Himalaya New World, Inc., as Farm Companies). *See also* Lomas ACA Transfer Summary, at 4-7 (showing transferor counterparties).

[129] Lomas ACA Transfer Summary, at 4 (Line 17).

[130] Trustee Ex. 1, Li Dep. Tr. at 46:2-22 and 64:5-18.

up a Farm Company to be used for the Farm Loan Program.[131] To join a Farm, members had to donate to the Rule of Law Foundation (an adjudged alter ego of the Debtor) and show their support for the Debtor.[132]

b) Li was the leader of a farm in Australia called G Translators, in which "G" stood for "Guo," and set up a Farm Company called G Translators Pty Ltd.[133] The Debtor picked the leader for each Farm. [134]

c) Li also assisted other Farms in transmitting funds in connection with the Farm Loan Program in which "every farm collected supporters' money, and then send it to [the Debtor's] entity" with the purpose "to get GTV shares," [135] using a loan agreement between the Farm member and his or her Farm that "was not a real loan."[136] When another Farm had collected sufficient funds from its members to participate in the Farm Loan Program, Li would inform the Debtor, and the Debtor would instruct Li where the money should be sent.[137]

d) Li testified she transferred funds in this manner multiple times to ACA based on instructions she received directly from the Debtor, and that she saw in her group chat with the Debtor and other Farm leaders that the Debtor also instructed other Farm leaders to send funds to ACA "on many occasions."[138] Li testified that "for the farm loan program, we send the money to ACA Capital."[139]

46. ACA received $181 million between May of 2015 and January of 2019 from Roscalitar2.[140] Roscalitar2, an entity reportedly linked to the Abu Dhabi sovereign wealth fund,[141] has funded billions of dollars to the Debtor's companies,[142] in particular Alfonso Global Limited ("Alfonso") and Alfa Global Ventures Limited ("Alfa"), both companies with respect to which the Court has issued Alter Ego Rulings.[143] Roscalitar2 was at one time the holder of a pledge to the shares of Genever Holdings Corporation, the BVI company through which the Debtor held Genever Holdings LLC, the former titleholder to the Debtor's Sherry Netherland Apartment.[144]

131 *Id.* at 37:1-38:6.
132 *Id.* at 41:4-15
133 *Id.* at 38:7-23.
134 *Id.* at 39:20-40:2.
135 *Id.* at 52:18-53:5.
136 *Id.* at 53:2-54:3. *See also id.* at 54:13-15.
137 *Id.*, at 62:25-63:11.
138 Trustee Ex. 1, Li Dep. Tr. at 65:1-17.
139 *Id.* at 66:2-67:2.
140 *Id.* at 4 (Line 1).
141 Trustee Ex. 128.
142 Trustee Ex. 141 (B&H_138811).
143 Amended Default Judgment ¶¶ 20, 21 (AP 24-05318, Docket No. 140)
144 Trustee Ex. 451 (WC-KWOK BANKR-0015264).

The Debtor had a United Arab Emirates ("UAE") passport.[145]

47. Between June 2015 and October 2023, ACA made outgoing transfers of approximately $422 million.[146] Of this amount, approximately $313 million was transferred to companies with respect to which the Trustee has obtained Alter Ego Judgments or asserted pending Alter Ego Claims.[147]

48. Recipients of transfers from ACA with respect to which the Trustee has obtained Alter Ego Judgments include: (a) Anton[148] (received transfers totaling approximately $102 million);[149] (b) Lexington[150] (received transfers totaling approximately $33 million);[151] (c) Saraca[152] (received direct transfers from ACA totaling approximately $7.5 million[153] along with a transfer of $32 million from ACA to Savio Law LLC, acting as Saraca's escrow agent);[154] (d) Lamp Capital[155] (received transfers totaling approximately $22 million);[156] (e) Hudson Diamond NY[157] (received transfers totaling approximately $18 million,[158] $13 million of which was then transferred to Lamp Capital, from which it was transferred to the Debtor's son[159]); (f) Golden Spring[160] (received transfers totaling approximately $10.4 million);[161] (g) River Valley Operations

145 *Letter Supplementing Application for Release on Bail Pending Trial,* Ex. B, Criminal Case ECF 50-2, at 5.
146 Lomas ACA Transfer Summary, at 1 (Total Identified Outflows).
147 *Id.* at 13 (Row A + Row B).
148 Amended Default Judgment ¶ 18 (Adv. Proc. 24-05318, ECF 140).
149 Lomas ACA Transfer Summary, at 9 (Row 1).
150 Amended Default Judgment and Permanent Injunction ¶¶ 2-3 (Adv. Proc. 23-05013, ECF 297).
151 Lomas ACA Transfer Summary, at 9 (Row 2).
152 Amended Default Judgment ¶ 1 (Adv. Proc. 24-05318, ECF 140).
153 Lomas ACA Transfer Summary, at 9 (Row 17).
154 Lomas ACA Transfer Summary, at 9 (Row 3).
155 Default Judgment ¶¶ 2-3 (Adv. Proc. 23-05023, ECF 66)
156 Lomas ACA Transfer Summary, at 9 (Row 6).
157 Summary Judgment ¶¶ 1-2 (Adv. Proc. 23-05023, ECF 138).
158 Lomas ACA Transfer Summary, at 9 (Row 8).
159 Trustee Ex. 168 (CTRL00512340).
160 Default Judgment ¶¶ 3-4 (Adv. Proc. 23-05018, ECF 35).
161 Lomas ACA Transfer Summary, at 9 (Row 10).

LLC[162] (received transfers totaling approximately $8 million);[163] (h) Leading Shine NY[164] (received transfers totaling approximately $6 million);[165] (i) Greenwich Land LLC[166] (received transfers totaling approximately $5 million);[167] (j) Fiesta Investment Limited[168] (received transfers totaling approximately $572,000),[169] (k) Rule of Law Foundation[170] (received transfer of approximately $500,000);[171] (l) Rule of Law Society[172] (received transfer of approximately $500,000);[173] and (m) China Golden Spring[174] (received transfers totaling approximately $146,000).[175]

49. Recipients of transfers from ACA with respect to which the Trustee has asserted pending Alter Ego Claims include: Himalaya International Clearing[176] (received transfers totaling approximately $22 million);[177] and Hamilton Opportunity Fund[178] (received transfers totaling approximately $9 million, $5 million of which was then transferred to Amy Buck's escrow account to pay for furnishing of the Debtor's Mahwah Mansion).[179]

50. The Debtor also used ACA to pay numerous of his expenses, for example: (a) [redacted]

---

162 Default Judgment ¶¶ 9-10 (Adv. Proc. 24-05322, ECF 106).
163 Lomas ACA Transfer Summary, at 9 (Row 15).
164 Summary Judgment ¶¶ 3-4 (Adv. Proc. 23-05023, ECF 138).
165 Lomas ACA Transfer Summary, at 9 (Row 19).
166 Summary Judgment ¶¶ 2-3 (Adv. Proc. 23-05005, ECF 134).
167 Lomas ACA Transfer Summary, at 9 (Row 22).
168 Default Judgment ¶ 11 (Adv. Proc. 24-05322, ECF 106).
169 Lomas ACA Transfer Summary, at 10 (Row 37).
170 Amended Default Judgment ¶ 13 (Adv. Proc. 24-05318, ECF 140).
171 Lomas ACA Transfer Summary, at 10 (Row 42).
172 Amended Default Judgment ¶ 14 (Adv. Proc. 24-05318, ECF 140).
173 Lomas ACA Transfer Summary, at 10 (Row 41).
174 Amended Default Judgment ¶ 15 (Adv. Proc. 24-05318, ECF 140).
175 Lomas ACA Transfer Summary, at 11 (Row 53).
176 *See Amended Complaint of Chapter 11 Trustee for Estate of Ho Wan Kwok, Pursuant to Bankruptcy Code Sections 541, 542, and 544, Seeking (I) Declaratory Judgment That Certain Entities are Alter Egos of Debtor and (II) Related Relief* (the "Amended Complaint") ¶ 4(a)(iii) (Adv. Proc 24-05249, ECF No. 106).
177 Lomas ACA Transfer Summary, at 9 (Row 5).
178 *See* Amended Complaint ¶ 4(c)(ii); *Complaint of Chapter 11 Trustee Seeking Avoidance and Recovery of Postpetition Transfers and Related Relief Pursuant to Bankruptcy Code Sections 549 and 550* (the "Pure Global Complaint") ¶¶ 13-16 (Adv. Proc. 24-05268, ECF 1).
179 Lomas ACA Transfer Summary, at 9 (Row 14).

[redacted];[180] (b) the $1 million fee paid to Strategic Vision US LLC ("Strategic Vision") for its investigation services pursuant to the contract between Strategic Vision and Eastern[181] ; (c) expenses related to the management of the Debtor's yacht, the *Lady May*, paid to Nigel Burgess[182]; (d) expenses related to the management of the Debtor's Bombardier Jet, paid to Flying Colours Corp. and ACASS Canada[183]; (e) expenses related to the Debtor's travel, paid to ACASS Canada[184]; (f) amounts owed to the Sherry Netherland Inc., related to the Debtor's residence[185]; (g) legal fees paid to numerous law firms representing the Debtor, such as Williams & Connolly LLP, ucker Levin PLLC, Foley Hoag, Cohen Howard LLP, VX Cerda & Associates PA, and Hodgson Russ[186]; (h) legal fees of the Debtor's adjudged alter ego, Saraca, paid to Kelman PLLC[187]; (i) legal fees of Ace Decade Holdings Limited, which this Court has ruled was beneficially owned by the Debtor, paid to the Hong Kong law firm of Michael Li &

---

180 Lomas ACA Transfer Summary, at 12 (Row 104); Trustee Ex. 172 (CTRL00513902) (ACA HSBC account records at 49); Trustee Ex. 453 (MAL 0008) (Mar-a-Lago member history inquiry showing "02635 – Ho Wan Kwok").

181 Lomas Transfer Summary, at 10 (Row 30); *Eastern Profit Corp. Ltd. v. Strategic Vision US LLC*, No. 18-CV-2185 (LJL), 2021 WL 2554631. Though the $1 million was paid by ACA pursuant to purported loan agreement between ACA and Eastern, these funds were found by Judge Liman to be "a gift on behalf of Eastern (and [the Debtor]) and not provided out of any obligation." *Id.*, at *41.

182 Lomas ACA Transfer Summary, at 10 (Row 40); Trustee Ex. 172 (CTRL00513902) (ACA HSBC account records) at 8, 14, 44, 57.

183 Lomas ACA Transfer Summary, at 10 (Rows 33 and 39); Trustee Ex. 172, (CTRL00513902) (ACA HSBC account records) at 4. Trustee Exs. 112 (AC0059724), 113 (AC0059637), 114 (AC0003609), 115 (AC0062060), 116 (AC0003611), 117 (AC0062143), 118 (AC0003612), 119 (AC0062561), 120 (AC0003613), 121 (AC0062815) ACASS invoices related to Debtor's Bombardier jet). *See also* Trustee Exs. 122 (AC0059590), 123 (AC0059722), 124 (AC0003607) (emails showing Wang and Krasner handling these invoices for Debtor's travel).

184 Lomas ACA Transfer Summary, at 10 (Row 33); Trustee Ex. 172 (CTRL00513902) (ACA HSBC account records). Trustee Exs. 125 (AC0061945), 126 (AC0060846), 127 (AC0060853), and 472 (ACASS00000095) (ACASS invoices related to Debtor's Bombardier jet).

185 Lomas ACA Transfer Summary, at 11 (Row 61); Trustee Ex. 172 (CTRL00513902) (ACA HSBC account records) at 54.

186 Lomas ACA Transfer Summary, at 10 (Rows 31, 38, 44, 47) and 11 (Rows 55 and 68). Trustee Ex. 172 (CTRL00513902) (ACA HSBC account records) at 6, 15, 25, 34, 42, 50, 53, 55-57, 60. Trustee Exs. 300 (WC-KWOK BANKR-0024473), 109 (CTRL00010130), 110 (CTRL00010248), 468 (FOLEYHOAG-0000009); 469 (FOLEYHOAG-0000032), 470 (FOLEYHOAG-0000040), 471 (FOLEYHOAG-0000044), 111 (CTRL00540530).

187 Lomas ACA Transfer Summary, at 11 (Row 78).

Co[188]; (j) legal fees of Bravo Luck paid to Bravo Luck's BVI law firm, O'Neal Webster[189]; (k) Payroll services expenses of the Debtor's adjudged alter ego, Golden Spring, paid to GTM Payroll Services Inc[190]; (l) amounts invoiced by UBS AG to Well Origin Limited, a company of which the Debtor was the sole shareholder[191]; and (m) Fees for security services for the Debtor.[192]

51. ACA transferred $9 million to the escrow account of Golden Spring's counsel, Cohn & Birnbaum P.C., in April 2022, in connection with the Debtor's proposal early in the Chapter 11 Case that Golden Spring act as his DIP Lender.[193] ACA was also initially designated [redacted][194] Further, for the period between at least 2020 and 2021, ACA [redacted].[196]

52. The Defendants in discovery produced the following purported agreements: [redacted]

---

[188] Trustee Ex. 70 (SCAN00015874) (receipt for $100,000 in legal fees paid). *Order Granting Partial Resolution of Trustee's Contempt Mot.* (Main Case Docket No. 1110) (finding "the Debtor exclusively beneficially owned and controlled Ace Decade Holdings Limited").

[189] Lomas ACA Transfer Summary, at 10 (Row 33). O'Neal Webster's fees were subsequently paid for by Hamilton Investment Management Limited, another entity nominally owned by Je with respect to which the Trustee has asserted Alter Ego Claims. Trustee Ex. 454 (ONW00698) (payment by Hamilton Investment Management Limited); Trustee Ex. 455 (ONW00700) (same), Trustee Ex. 456 (ONW00702) (same).

[190] Lomas ACA Transfer Summary, at 12 (Row 85).

[191] Trustee Ex. 172 (CTRL00513902) (ACA HSBC bank records) at 21.

[192] Lomas ACA Transfer Summary, at 11 (Row 57). See Main Case Docket No. 77 at 6-7.

[193] Lomas ACA Transfer Summary, at 9 (Row 12); *see also* Trustee Ex. 457 (LSE0000165) at 229-232 ("It was instructions for [counsel] to send the $9 million that I had in my fiduciary account from ACA to Cohn Birnbaum.").

[194] Trustee Ex. 458 (HKI(USA)000317) Ex. 9 to Feb. 24, 2023 Kindseth Dep. (Loan Agreement); Trustee Ex. 457 (LSE0000165) at 136:22-137:21 (Q: "Does this appear to be the first draft of the loan agreement you were negotiating? A: It appears to be").

[195] Lomas ACA Transfer Summary, at 11 (Row 54).

[196] Trustee Ex. 287 (JointExchangeDefendants0026977); Trustee Ex. 288 (JointExchangeDefendants0027009); Trustee Ex. 289 (JointExchangeDefendants0027032); Trustee Ex. 290 (JointExchangeDefendants0027069).

[redacted][198]

53. Following the Trustee's assertion of Alter Ego Claims with respect to Alfa in 2024, the Trustee entered into a stipulated judgment with Maistrello, which provided that any ownership interest she held in Alfa was property of the Debtor or the Estate.[199] Maistrello testified that she was unaware she had been named a member of Alfa.[200] This Court subsequently entered a default judgment that Alfa is the Trustee's alter ego.[201]

54. Before July 1, 2020, ACA regularly made transfers directly to Debtor shell companies or to pay the expenses of the Debtor or his family and those entities (approximately $127 million in the aggregate).[202] These transfers continued after July 1, 2020 (in the amount of approximately $184 million in the aggregate).[203]

55. Alfa never provided any funding to ACA.[204] No management fees were ever paid by Alfa to ACA.[205] ACA never received any payments of interest or repayments of principal in connection with loans it purportedly entered into as lender, on Alfa's behalf, under the FAA.[206] ACA never made any payments of interest or repayments of principal in connection with the loan agreements it purportedly entered into as borrower, on Alfa's behalf, under the FAA.[207]

56. The original FAA, dated July 1, 2020, was signed for Alfa by the Debtor's daughter,

---

197 Trustee Ex. 459 (CelestialTide0000001) (FAA).
198 Trustee Ex. 460 (CelestialTide0000083) (Alfa Facility Agreement).
199 Stipulated Judgment ¶ 1 (Adv. Proc. 24-05318, ECF 109).
200 Trustee Ex. 24 (Maistrello Dep. Tr.) at 66:2-5.
201 Amended Default Judgment ¶ 20 (Adv. Proc. 24-05318, ECF 140).
202 *See, e.g.,* Lomas Transfer Summary, at 9 (Rows 1-2, 10, 17, 19).
203 *See, e.g.,* Lomas ACA Transfer Summary, at 10-13.
204 *Declaration of Adam Lomas in Support of Motion of Chapter 11 Trustee for Summary Judgment* ("Lomas Declaration") ¶ 6.
205 *Id.*
206 *Id.*
207 *Id.*

Mei Guo, and its supplement and subsequent documents were signed for Alfa by an individual named Wei Kailun.[208] Wei Kailun was purportedly appointed the authorized representative of Alfa by Mei Guo, as "sole member" of Alfa, pursuant to a Unanimous Written Consent of Sole Member dated July 30, 2020.[209] The Alfa register of members, dated November 5, 2020, provides that Maistrello was the sole member of Alfa since December 2018.[210]

**E. Debtor Invoked Fifth Amendment When Asked About ACA**

57. The Debtor has asserted the Fifth Amendment when asked: (i) whether he was familiar with ACA;[211] (ii) to describe his relationship with ACA;[212] (iii) whether he controlled ACA;[213] and (iv) whether he beneficially owned ACA.[214] This Court has ruled that such invocations of the Fifth Amendment are relevant in the summary judgment context, insofar as they establish that the Debtor does not dispute the testimony of other testifying witnesses.[215]

**III. <u>Debtor's Relationship with Himalaya Entities</u>**

58. The Criminal Court found that (i) the Debtor used "fictitious entities" and "corporate shells,"[216] and (ii) that his crimes involved "the invention of a phony cryptocurrency[.]"[217] At the sentencing hearing of Wang, Judge Torres identified Limarie Reyes (purported CEO of G Club) and Jesse Brown (purported CEO of Himalaya Exchange) as two examples of "figurehead"[218] executives who "lacked control over the businesses they supposedly ran and received instruction from Ms. Wang and Mr. Je."[219] The Criminal Court found that

---

208 Trustee Ex. 459 (CelestialTide0000001) (FAA).
209 Trustee Ex. 461 (CelestialTide0000147) (Alfa Unanimous Written Consent of Sole Member).
210 Trustee Ex. 27, Maistrello Dep. Ex. 13.
211 Trustee Ex. 52, Debtor Responses to Written Questions ¶ 403.
212 Trustee Ex. 52, Debtor Responses to Written Questions ¶ 404.
213 Trustee Ex. 52, Debtor Responses to Written Questions ¶ 405.
214 Trustee Ex. 52, Debtor Responses to Written Questions ¶ 406.
215 Greenwich Land Decision, at 18-19 (Adv. Proc. 23-05005, ECF 133).
216 *Guo Sentencing*, Criminal Case ECF 864 at 46:11-22 (internal pagination).
217 *Id.* at 46:11-16.
218 *Wang Sentencing*, Criminal Case ECF 491 at 10:14-11:8 (internal pagination).
219 *Id.*

"[Wang] and her co-conspirators concealed Guo's [*i.e.*, the Debtor's] funds by moving them regularly, disguising them as 'loans' or 'investments' and installing figurehead executives at the entities involved in these transactions."[220]

59. The Himalaya Entities failed to produce any tax returns or financial statements (with the exception of a purported consolidated income statement and balance sheet for the year 2021 of an undefined "Himalaya Group").[221]

**A. This Court Found that Debtor Was Leader of Himalaya Exchange**

60. This Court has found that the Debtor was the leader of the Himalaya Exchange.[222] The Court has found that certain Debtor-affiliated organizations and entities were involved in protests, including the Whistleblower Movement, New Federal State of China ("NFSC"), Rule of Law Foundation ("ROLF"), and "Himalaya,"[223] defined by the Court as the Himalaya Global Alliance "together with affiliated Himalaya entities, such as Himalaya Exchange and Himalaya Farms."[224] The Court also found that "[t]he Debtor is the leader of The Whistleblower Movement, NFSC, ROLF, and Himalaya. The Whistleblower Movement, NFSC, ROLF, GSeries, and Himalaya serve the purposes of the Debtor, serve as business vehicles for the Debtor, and their members are personally loyal to the Debtor."[225]

**B. Himalaya Entities Comprised Debtor's Himalaya Exchange Scheme**

61. The Himalaya Exchange was a purported online cryptocurrency "ecosystem" that the Debtor used to defraud his supporters out of hundreds of millions of dollars in investing in the purported cryptocurrencies "Himalaya Coin" (a/k/a "H Coin") and "Himalaya Dollar" (a/k/a "H

---

[220] *Wang Sentencing*, Criminal Case ECF 491 at 10:14-18.
[221] *See* Lomas Declaration, ¶ 3.
[222] *Corrected Memorandum of Decision Granting in Part Motion for Preliminary Injunction* (the "Preliminary Injunction Decision"), AP 22-05032, ECF 133.
[223] Preliminary Injunction Decision ¶¶ 6-7.
[224] *Id.* ¶ 4 (emphasis added), 6 (emphasis added).
[225] *Id.* ¶ 7.

Dollar").[226] The Criminal Court found H Coin and H Dollar to be "phony cryptocurrency," the Debtor's invention of which was one of the aspects of the Debtor's crime that supported an enhancement to his sentence.[227] According to the Himalaya Entities' documents, (a) HIC's "DBA" (doing business as) name is Himalaya Exchange,[228] (b) HIFG "issue[s] and manage[s]" Himalaya Coin,[229] (c) HIR "issue[s] and manage[s]" Himalaya Dollar,[230] (d) HIP is part of the "ecosystem of the Himalaya Exchange" and "will serve as payment processor,"[231] and (e) HCCP "provides customer service" for HIC, which is its "only client."[232]

**C. Debtor's Role as "Boss" of Himalaya Exchange**

62. In a July 2022 meeting that was recorded and attended by Ya Li, in response to a follower's comment about Je purportedly applying for licenses related to the Himalaya Exchange, the Debtor said, "William with his own company? You're joking. William is only representing me. What they're looking at is the Himalaya Exchange. From day one, that was my design, right? The prince knows I am supposed to be the boss . . ."[233] The Debtor also stated in the same recording, "[w]hen you speak, like what you just said about whether it might belong to William—you should slap yourself after saying that. People would think you have something wrong with your brain, right?"[234] The Debtor stated he had a meeting with representatives from a UAE sovereign wealth fund to "finalize an investment by the UAE into the Himalaya Exchange and the issuance of government licenses to the Himalaya Exchange,"[235] and "[c]hats between [Je] and [Wang] confirm

[226] *Superseding Indictment*, Criminal Case ECF 307 ¶ 19.
[227] *Guo Sentencing*, Criminal Case ECF 864 at 46:14-15.
[228] Trustee Ex. 462 (Mercantile-BKR-00024424).
[229] Trustee Ex. 72, at 3 (GXAS12).
[230] *Id*.
[231] Trustee Ex. 463 (Mercantile-BKR-00002238).
[232] Trustee Ex. 464 (Mercantile-BKR-00002929).
[233] Trustee Exs. 14 and 15, Ex. 10B to Li Deposition (YouTube Video) (CTRL00550333) at 10:21; Certified Translation of Ex. 10B to Li Deposition (CTRL00550412) at 4-5.
[234] Trustee Exs. 14 and 15, Ex. 10B to Li Deposition (YouTube Video) (CTRL00550333) at 14:58; Certified Translation of Ex. 10B to Li Deposition (CTRL00550412) at 6.
[235] *Guo Sentencing Letter*, Criminal Case ECF 826 at 90.

the scheduling and coordination of this meeting."[236] The Debtor stated he "encouraged continuation of efforts to partner and negotiate with the UAE as well as applications for UAE banking licenses post-arrest."[237] The Debtor said the Himalaya Exchange, "[f]rom day one . . . was my design."[238] Similarly, Ya Li testified the term "Himalaya" was chosen by the Debtor,[239] and that "[the Debtor] designed H-Coin, H-Dollar, Himalaya Exchange from Day 1."[240]

63. Himalaya Exchange was launched on November 1, 2021, and then-Himalaya Exchange CEO Jesse Brown testified this date was a "drop dead day issued by [the Debtor]"[241] to launch the Himalaya Exchange. Ya Li testified that in discussions in a WhatsApp chat group that included the Debtor, Je, and Iron Blood Group members, the Debtor demanded the Himalaya Exchange be launched on November 1, 2021 "no matter what happened."[242] According to an article posted on GNews in 2021, the official launch of H Coin was set for November 1, at 11:11 am GMT (7:11 am EDT), because "[t]here are 7 '1s' (11/01, 11:11) in the offering date and time."[243] To the Debtor's followers and as part of the Debtor's fraudulent enterprise, the number "7" is symbolic of the Debtor, as it is widely known that the Debtor goes by Brother Seven and his followers call him Brother Seven.[244]

64. Ya Li testified that the Debtor designed the "H Coin quota"[245] allowing supporters to subscribe to a certain amount of H Coin at a discount prior to the November 1, 2021 launch

---

236 *Id.*
237 *Id.*
238 Trustee Exs. 14 and 15, Ex. 10B to Li Deposition (YouTube Video) (CTRL00550333) at 14:58; Certified Translation of Ex. 10B to Li Deposition (CTRL00550412) at 5.
239 Trustee Ex. 1 (Ya Li Tr.) at 37:11-20.
240 *Id.* at 74:18-20.
241 Trustee Ex. 81 (Jesse Brown Criminal Tr.) at 3670:6-7. *See also* Trustee Ex. 101 (GXZ9) at 123-24, 132.
242 Trustee Ex. 1 (Ya Li Tr.) at 79:11-13 ("So at the end Miles Guo said, 'You have to launch 1st of November 2021 no -- no matter what.'").
243 Trustee Ex. 56.
244 Trustee Ex. 1 (Ya Li Tr.) at 23:3-13; 28:21-24: see also Superseding Indictment, Criminal Case ECF 307.
245 *Id.* at 75:12-14.

date.[246] The H Coin Quota established the amount of H Coin a Farm member could purchase at a 10% discount, based on the total amount of H Coin the supporter subscribed to, as well as the supporter's donations of money and time, in the form of volunteer work, to the Debtor's cause.[247] The H Coin Quota was set forth in a form agreement (the "Quota Agreement"), nominally between the Farm member and the Farm Company.[248] Ya Li entered into a Quota Agreement dated October 21, 2021.[249] It provides that Li was allowed, "in recognition of the contributions" she had made, to purchase an 66,781 H Coin at a discount rate of ten cents per H Coin.[250] The Quota Agreement contained undertakings that the Farm member would not take or support any actions "against the core values and ideals of" the Farm, which meant, that a Himalaya farm member who "criticized Miles Guo" could lose his or her H Coin as a result.[251] Ya Li watched a December 2021 livestream video broadcast of the Debtor (the "December 2021 Livestream").[252] Ya Li testified that during the December 2021 Livestream the Debtor, referring to himself as Brother 7, stated that that "for any single coin you lost, Brother 7 will be responsible. For any documents given to you by the Himalaya Exchange and the alliance, Brother 7 will be fully responsible."[253]

65. During a January 10, 2022 livestream video broadcast (the "January 2022 Livestream") of the Debtor, he stated:

> No one will take your personal information away, and I will always be responsible if anyone does so . . . once you have purchased the coins, if you have any financial losses, Qige [Brother 7] will be responsible. You will only make money, without experiencing any

---

[246] *Id.* at 75:1-11.
[247] *Id.*
[248] *Id.* at 76:6-22.
[249] Trustee Ex. 10 (GXVI171). In Ya Li's case, because she was a farm leader. *See* Trustee Ex. 1 (Ya Li Tr.) at 76:6-22.
[250] Trustee Ex. 10 (GXVI171) at 1.
[251] Trustee Ex. 1 (Ya Li Tr.) at 77:5-24.
[252] Trustee Ex. 1 (Ya Li Tr.) at 84:23-25.
[253] Trustee Ex. 11 (GXVI181); *See* Trustee Ex. 1 (Ya Li Tr.) at 85:16-23.

losses . . . This is guaranteed by Qige [Brother 7].[254]

66. During a July 2022 video meeting (the "July 2022 Meeting"), the Debtor instructed the Iron Blood Group members to find a CFO and an in-house lawyer for the Himalaya Exchange based in the UK.[255] The Debtor stated, "[a]s quickly as possible, we need to find a qualified CFO, and the Himalaya Exchange will directly send someone over. He must obey unconditionally. Then after the CFO goes in, the in-house lawyer needs to go in. After that, we need to find a deputy CTO to work alongside the CTO."[256]

67. Ya Li testified that around June and July 2022, discussions involving the Debtor occurred and related to moving the Himalaya Exchange from the UK to Abu Dhabi, and it was the Debtor's idea to do so.[257] In the July 2022 Meeting, the Debtor stated to Iron Blood Group members that a "BVI structure"[258] must be be set up for the Himalaya Exchange in the UAE, because "using a BVI structure allows many people who do not wish to appear publicly to participate as investors through BVI."[259] The Debtor explained that as to Himalaya Exchange's UAE licenses, which Je allegedly had submitted applications for, "[o]f course he [*i.e.*, Je] must hand it over to you. You will manage it there. How could it be William? William will also be involved. But those four licenses must be managed by you there."[260]

**D. Debtor's Agents at Himalaya Exchange**

68. The Debtor's son, Mileson, exchanged multiple e-mail communications with Ferrari personnel regarding a proposed Himalaya Exchange sponsorship of Ferrari events.[261]

---

[254] Trustee Ex. 73 (GXW1020); Trustee Ex. 74 (GXW1020-V); Trustee Ex. 75 (GXW1020-T).
[255] Trustee Ex. 15 (CTRL00550412) at 29.
[256] *Id.*
[257] Trustee Ex. 1 (Ya Li Tr.) at 87:6-20.
[258] *Id.* at 7.
[259] *Id.*
[260] *Id.* at 4.
[261] Trustee Ex. 76 (GXUK286); Trustee Ex. 77 (GXUK291); Trustee Ex. 78 (GXUK293); Trustee Ex. 79 (GXUK302); Trustee Ex. 80 (GXUK315).

Mileson wrote to Ferrari personnel that he had "instructed our Exchange to concentrate on a proposal for Ferrari[,]" and sent Himalaya Exchange proposals to Ferrari.[262] In June 2022, Ferrari emailed a draft MOI to both Mileson and Je and inquired whether the person signing the contract on behalf of Himalaya Exchange would be Mileson.[263] Mileson and Je met with Ferrari personnel in person, in London,[264] and Ferrari inquired regarding Mileson's "ties to ownership" of an unspecified Australian company that would be signing the MOU with Ferrari.[265] Je responded by stating that Mileson "is an investor in Hamilton Opportunity Fund and is also responsible for the Ferrari project for Himalaya Exchange."[266]

69. Wang discussed the Debtor's plan for a cryptocurrency exchange with Je and Jessica Mastrogiovanni.[267] Wang also interviewed Jesse Brown in connection with his hiring[268] and signed documents for Saraca to establish Himalaya Coin and Himalaya Dollar as assumed names of Saraca.[269] And Ya Li testified that members of the Debtor's Iron Blood Group have been employed at the Himalaya Exchange.[270]

70. Brown testified in the Criminal Case that (a) he felt like a "strawman" while working at the Himalaya Exchange who "didn't really have any say in anything that went on"[271]; (b) a "[s]trawman is . . . just kind of the face of it but don't really have any input into the decisions"[272]; (c) he was hired after interviewing with Wang and Je, that he took instruction from Je, and that Je appointed him to his position as CEO of Himalaya Exchange during a meeting

---

[262] Trustee Ex. 76 (GXUK286); Trustee Ex. 77 (GXUK291); Trustee Ex. 78 (GXUK293).
[263] Trustee Ex. 79 (GXUK302).
[264] Trustee Ex. 80 (GXUK315) at 1.
[265] *Id.*
[266] *Id.* at 7.
[267] Trustee Ex. 477 (CTRL00547129).
[268] Trustee Ex. 81 (Jesse Brown Criminal Tr.) at 3637:24-3638:4.
[269] Trustee Ex. 84 (HR0020318); Trustee Ex.85] (HR0016485); Trustee Ex. 86 (HR0016489).
[270] Trustee Ex. 1 (Li Depo. Tr.) at 180:4-10.
[271] Trustee Ex. 81 (Jesse Brown Criminal Tr.) at 3665:6-13.
[272] *Id.* at 3665:18-20.

without telling Brown about the appointment or putting the appointment on the meeting agenda[273]; (d) the appointment as CEO surprised him, as he did not consider himself "CEO material," was "a terrible public speaker," and did not "understand all the dynamics that go with being a chief executive," and had never previously been a CEO or lead an organization[274]; (e) the only work responsibilities that changed for him following his promotion to CEO involved marketing and "doing some video sessions and doing some interviews that were given to me by the marketing team," which "would decide who I would talk to and when. They would set the agendas."[275]; (f) when he was first hired by GTV he was paid by Guo Media and GTV, and he was subsequently transferred to the payroll of Hamilton, but "[n]othing changed" about Brown's work when this transfer occurred[276]; (g) "nothing changed," when Brown was named President of the Himalaya Exchange and replaced as titular CEO by an individual named "Kevin," whom the Debtor selected as new CEO[277]; (h) he was not allowed access to the Himalaya Exchange's technology and internal database.[278]

### E. "Himalaya Exchange Ecosystem" Consisted of Debtor's Shell Entities

71. In August 2020, [redacted].[279] On August 21, 2020, Marios Mamzeris ("Mamzeris") [redacted]

---

[273] *Id.* at 3667:13-25.
[274] *Id.* at 3668:1-13.
[275] Trustee Ex. 81 (Jesse Brown Criminal Tr.) at 3668:14-24.
[276] *Id.* at 3644:18-3645:10.
[277] *Id.* at 3704:24-3705:14.
[278] *Id.* at 3658:20-24.
[279] Trustee Ex. 465 (JointExchangeDefendants0021566).

[redacted].[284]

72. Brown testified that (a) "besides the Miles Guo companies," there were no other companies that were part of the so-called Himalaya Exchange ecosystem[285]; (b) G Club was a client of the Himalaya Exchange that would use the Himalaya Exchange "for the money transfer for the purchase of the G/Club memberships"[286]; and (c) Hamilton Investment Management was a fund that "was going to work with the exchange . . . people in the fund were allowed access to the—to the—to the coins."[287]

73. Ya Li testified that (a) she transferred money to GFNY, Inc., with an address at the Debtor's offices at Columbus Circle in New York,[288] to purchase H Dollar, and that following the arrest of the Debtor and Wang in March 2023, GFNY, Inc. refunded this money to Li, who then

280 *Id.* at -1575.
281 Trustee Ex. 465 (JointExchangeDefendants0021566), at 1575.
282 *Id.* at 1568.
283 *Id.* at 1566.
284 Trustee Ex. 466 (JointExchangeDefendants0002971), at 2981-82.
285 Trustee Ex. 81 (Jesse Brown Criminal Tr.) at 3640:25-3641:2.
286 *Id.* at 3664:18-20.
287 *Id.* at 3643:14-19.
288 3 Columbus Circ. Floor 20, New York, New York 10019. Trustee Ex. 2 (Ya Li Criminal Tr.) at 1473:21-22.

sent it the account in Abu Dhabi of G Club ME[289]; (b) the Debtor installed Li as director of Holy City Hong Kong BVI ("HCHK BVI"), the parent of the HCHK Entities nominally owned by Wang, with the rationale that HCHK BVI would act as a new Rule of Law Foundation in BVI, where it would be able to accept H Dollar donations[290]; (c) she received, using a company she had established in Australia for this purpose, approximately $5 million from Himalaya Farms in New York and Japan that she sent to "Hamilton Fund," an "institutional investor to Himalaya Exchange" because "[t]hey were going to buy H coin for us."[291]

74. Brown testified that (a) customers of Himalaya Exchange could never purchase H Coin or H Dollar on a blockchain; the Himalaya Exchange simply kept a database[292]; (b) the market valuation of H Coin was maintained through a "humming bot" automated program that simulated trading activity, and not through real trades[293]; (c) participants in the Himalaya Exchange never purchased H Coin or H Dollar, but merely credits to H Coin or H Dollar, which credits were not cryptocurrency[294]; and (d) he found it "amusing" when Je described the credits in a meeting "as if they were like an amusement park credits where you pay for tickets and cash them out when you left the park" which "flies in the face of a cryptocurrency," which is "about a public chain where transactions are viewed to and for everyone. And everything that goes on, on that chain people have access to. This wasn't anything like that."[295]

75. Between February and July 2022, HIC transferred approximately $5.2 million to GCP Investment Advisors SL ("GCP Investment").[296] Pursuant to the vehicle sale agreement

[289] *See* Trustee Ex. 2 (Ya Li Criminal Tr.) at 1473:14-22; 1476:2-17.
[290] *Id.* at 1513:1-1514:6.
[291] *See* Trustee Ex. 2 (Ya Li Criminal Tr.) at 1419:22-1420:-12.
[292] Trustee Ex. 81 (Jesse Brown Criminal Tr.) at 3657:3-9.
[293] *Id.* at 3682:24-3683:8.
[294] *Id.* at 3659:11-3660:5.
[295] *Id.* at 3661:25-3662:11.
[296] Trustee Ex. 136 (Lomas HIC Transfer Summary) at 7 (Row 11).

dated February 2, 2022, GCP Investment is the seller of a McLaren MP4/5A-06 vehicle (the "McLaren Vehicle").[297] The buyer is Harmony Estate Holding Limited ("Harmony"), with an address in Nassau, Bahamas.[298] Andrew Law, known as "Mileson's friend," signed on behalf of the Harmony.[299] Delivery of the McLaren Vehicle was to be taken at 1053 Great West Road, Brentford TW8 9BW, London, the United Kingdom[300]. Mileson referred to this address as his "man cave."[301] The email contact for Harmony was ravshokar@protonmail.com—*i.e.*, Ravinder Shokar, who is Mileson's assistant.[302] In an April 2023 email, Mileson sent a picture of himself and another person next to a Mclaren F1 vehicle that appears identical to the McLaren Vehicle.[303]

76. A press release by Himalaya Exchange dated March 10, 2022 said this transaction was "facilitated" by the "Himalaya Exchange's newly launched Payment Application, Himalaya Pay," and the vehicle was "privately purchased by means of a Himalaya Pay member-to-member transfer of Himalaya Dollar."[304] The purchase contract states that the title in the McLaren Vehicle would be transferred to the buyer "on receipt of the Final Payment in cleared funds into the Seller's bank account."[305] The purchase contract also provides that the first installment (GBP £3,000,000) of the sale price (GBP £3,950,000) would "be paid through the cryptocurrency exchange known as the Himalaya Exchange," it also states that the "Buyer guarantees that First Deposit shall have a minimum value of GBP £3,000,000."[306]

77. In May and June 2022, HIC transferred approximately $4 million to RM Auctions

---

297 Trustee Ex. 476 (HIC0006987).
298 *Id.*
299 *Id.*
300 *Reply of GCP Investment Advisors SL*, AP No. 24-05260, Docket No. 47, at 16.
301 Trustee Ex. 103 (GXUK195).
302 Trustee Ex. 104 (GXUK306) and *Notice of Filing of Certificate of Service* (Main Case Doc 4617) (showing Shokar being Mileson's authorized agent to pick up document for Mileson in Switzerland).
303 Trustee 105 (GXUK408).
304 Trustee Ex. 106 (CTRL00550374).
305 Trustee Ex. 476 (HIC0006987), at 3.
306 *Id.*

Deutschland GmbH. [307] The bill of sale dated May 14, 2022 provides that the buyer of this 1989 Ferrari 640 is Mileson.[308] According to a Himalaya Exchange a press release dated June 15, 2022, this "iconic 1989 Ferrari 640 . . . has been sold using Himalaya Dollar."[309] It also states, "earlier this year, the Himalaya Exchange was also used by McLaren in a similar transaction that was reported in March 2022."[310]

**F. Debtor Designed Himalaya Exchange Scheme, Including H Coin and H Dollar**

78. In 2020, the Debtor, using Saraca and its subsidiary, GTV, promoted to his followers "G Coin" and "G Dollar," purportedly issued by a "Himalaya Reserve" (collectively "G Coin/G Dollar"). The Debtor rebranded G Coin/G Dollar to H Coin/H Dollar, to be traded on the Himalaya Exchange.[311]

79. On May 4, 2020 the Debtor discussed with his counsel Aaron Mitchell regarding "G Coin," and Mitchell's time records show that on numerous subsequent occasions Mitchell performed numerous tasks on "crypto-related" issues, such as research into "crypto attorneys" on May 10, 2020 and a report "to Y re: crypto[] results" on May 11, 2020.[312]

80. On May 12, 2020, Mitchell emailed Valerie Stevens, (CCing the Debtor's agents Max Krasner and Wang), asking Hodgson Russ to file certain "doing business as" (i.e., d/b/a) names for Saraca and its subsidiary, GTV. [313] Mitchell's email provided that the d/b/a names for Saraca should include "Himalaya Coin" and "Himalaya Dollar,"[314] and the corporate resolutions

---

307 Trustee Ex. 136 (Lomas HIC Transfer Summary), at 7 (Row 12).
308 Trustee Ex. 467, (HIC0006997).
309 Trustee Ex. 64 (CTRL00550376).
310 *Id.*
311 *See* Trustee Ex. 2 (Ya Li Criminal Tr.) at 67:23-68:2 ("H-Coin is a -- Miles Guo created this cryptocurrency. So H-Coin's original name is G Coin. It was GTV's together at that time. But because G Coin been seized by SEC, so the new name become H-Coin.").
312 Trustee Ex. 82 (CTRL00546880).
313 Trustee Ex. 83 (HR0017337).
314 *Id.*

and New York state filing forms related to adopting these d/b/a names were completed on May 13 and May 14, 2020.[315]

81. The FBI collected a Word document, last revised on May 13, 2020, from one of the Debtor's cell phones found at the Debtor's Sherry Netherland residence.[316] This document is titled "Four Currencies Joint Programme" and proposes a "Himalaya Reserve" to serve as "the independent holding company for all G currencies. It is central to the plans for the Himalaya financial system."[317] The Word document includes plans for the development of additional cryptocurrency stages, or "versions," including, in "Version 2", a "G Dollar," as well as "G Coins" convertible to GTV stock.[318] The Word document provides that the final stage, "Version 4," states: "The ultimate objective is the Himalaya Reserve. The Father coin, also called Himalaya Coin, will be publicly tradable and circulatable. It will be a stable coin and be a real tangible currency."[319]

82. Brown testified that (a) he was hired in June 2020 by GTV, that he understood the "G" in GTV to stand for "Miles Guo," and that he understood GTV to be controlled by the Debtor,[320] "to help launch and create cryptocurrency as well as work to build out or develop an exchange"; (b) the cryptocurrency he was hired to help launch was "branded G Coin and G Dollar", naming which he believed was "for Miles Guo"[321]; (c) he was hired to help with the creation of the coins for Guo Media[322]; (d) he was hired to develop G Coin/G Dollar branded cryptocurrency, he learned about H Coin/H Dollar "pretty much my first day," and (e) there "was no difference . .

[315] Trustee Ex. 84 (HR0020318); Trustee Ex. 85 (HR0016485); Trustee Ex. 86 (HR0016489).
[316] Trustee Ex. 87 (GXSTIP17) (showing 1B125 is an iPhone found in a bag in the Sherry Apartment); Trustee Ex. 88 (1B125) (showing Kwok is the owner of the phone); Trustee Ex. 89 (GX1B125A) (extraction from phone).
[317] Trustee Ex. 89 (GX1B125A).
[318] *Id.* at 2.
[319] *Id.* at 4.
[320] Trustee Ex. 81 (Jesse Brown Criminal Tr.) at 3639:9-22.
[321] *Id.* at 3640:4-14.
[322] *Id.* at 3649:7-21

. between G Dollar and G Coin on one hand and H Dollar and H Coin on the other hand."[323] An offer letter from GTV to Brown, dated June 17, 2020, includes his position as "Associate Director – Blockchain, reporting to Joe Wang, Chief Tech Officer, and Wang, Director, at our New York City office at 162 East 64th Street."[324]

83. Between May and September 2020, the Debtor promoted G Coin/G Dollar, including by reference to "Himalaya":

a) In a May 13, 2020 video broadcast, the Debtor told viewers: "There is no place to go, ***you can only come to the Himalaya Reserve to*** buy Dollar, buy G coins."[325]

b) In a June 2, 2020 video broadcast, the Debtor told viewers: "At the same time, as our fellow fighters know, our GDOLLAR, and GCOIN, this pre-sale of the whole system will also start immediately, and will be fully online and start running in three and a half months from now. Then, the Stable Coin ***issued by our Himalayan Federal Reserve***, the HiFed, and the GCOIN jointly used by our online, our GFASHION and GNEWS, GTV will all be fully online."[326]

c) In a July 22, 2020 video broadcast, the Debtor told viewers: "Next, our G-Club, G-Fashion, G-Coin, G-Dollar, ***and the H-Coin and H-Dollar***, will become the greatest currencies in the world, please remember this."[327]

d) In a September 20, 2020 video broadcast, Kwok told viewers: "G Dollar is pegged to the US dollar and other currencies" and "you can put your money here for a long time, even forever. You can take it away in minutes, from your G Dollar account, ***which is also our Himalaya-coin***, directly to the virtual currency G Coin . . . ."[328]

84. A July 2020 invoice of the Debtor's counsel, Aaron Mitchell, references an SEC subpoena, telephone calls with the SEC, and correspondence regarding G Dollar.[329] A letter dated July 15, 2020, sent via email to Saraca (attention to Je, Max Krasner, Wang, and Mitchell), by Hayman, included inquiries regarding the source of the money used by Saraca to invest in

---

323 Trustee Ex. 81 (Jesse Brown Criminal Tr.) at 3648:25-3649:6.
324 Trustee Ex. 90 (GX3419) at 1.
325 Trustee Ex. 91 (GXC6V) at 3:01-3:48. Trustee Ex. 92 (GXC6-TX).
326 Trustee Ex. 93 (GXC63-V4) at 20:31-20:49. Trustee Ex. 94 (GXC63-TX).
327 Trustee Ex. 95 (GXC212) at 10:25-10:45.
328 Trustee Ex. 96 (GXC205) at 3:14-3:43. The DOJ exhibit GXZ9 is a summary of Kwok's video broadcast and it contains countless other examples of Kwok promoting G Dollar and G Coin (and later H Coin and H Dollar). *See* Trustee Ex. 101 (GXZ9).
329 Trustee Ex. 97 (CTRL00546857).

Hayman.[330] The letter provides: "We have been contacted by the [SEC] related to an investigation of a securities offering by [GTV] entitled "In the matter of G Coins (NY-10256)."[331] On September 13, 2021, the SEC issued a Cease and Desist Order which stated, among other things, that Saraca and GTV had offered and sold G Coin/G Dollar in violation of the Securities Act, and that they had undertaken to "[n]ot participate, directly or indirectly, in any offering of a digital asset security[.]"[332]

85. Jessica Mastrogiovanni, Saraca's General Counsel from August 2020 to March 2021, testified that she attended a video conference with the Debtor, Wang, Victor Cerda,[333] and Je where they discussed cryptocurrency opportunities.[334]

86. In November 2020, most of the Himalaya Exchange Entities were formed in the BVI, along with a BVI entity called Freedom Media Ventures Limited ("FMV").[335] FMV was nominally owned by Haoran He,[336] and the Debtor referred to FMV as the "new GTV."[337] This Court has already issued an Alter Ego Judgment in favor of the Trustee with respect to FMV.[338] Ya Li testified that the Debtor's supporters would eventually be required to transfer a large portion of the H Coin held in their Himalaya Exchange accounts to be "locked up" in the Himalaya Exchange account of FMV, which Li stated was another of the "headquarter" companies controlled by the Debtor.[339] Li testified that Haoran He held FMV on behalf of the Debtor, and she

330 Trustee Ex. 50 (GXHN208).
331 *Id.*
332 Trustee Ex. 98 at 7-8.
333 Mastrogiovanni understood Victor Cerda to "oversee legal work for the Debtor and his family office", and that he reported directly to the Debtor and Wang. *See* Trustee Ex. 477 (CTRL00547129) at 6.
334 Trustee Ex. 477 (CTRL00547129) at 5.
335 Trustee Ex. 102 (GXBR309).
336 Trustee Ex. 2 (Ya Li Criminal Tr.) at 1425:13-22.
337 *Id.* at 1421:24-1422:3.
338 Amended Default Judgment ¶ 11 (AP 24-05318, Docket No. 140).
339 Trustee Ex. 1 (Ya Li Tr.) at 83:11-22.

understood He represented the Debtor's family.[340]

87. In an April 27, 2021 video broadcast, the Debtor stated to viewers that "the White Paper of Himalaya Coin is the best one in the world, and the H-Coin, H-Dollar, H-Reserve will change the financial system."[341] In an April 29, 2021 video broadcast, the Debtor stated to viewers that H Dollar going online is "a huge online success" and that "the arrival of Himalaya Coin, the Himalaya Dollar, and the Himalaya Reserve is perfectly timed."[342] The Debtor made similar promotional H Coin broadcasts.[343] On December 10, 2021, the Debtor released his "HCoin to the Moon" music video, featuring himself on the Lady May and driving a red Lamborghini vehicle.[344]

**G. Transfers of Himalaya Entities' Funds**

88. According to available records, HIP has not had a bank account. The Debtor was responsible for funding each Himalaya Entity that did have a bank account, through transfers from companies he controlled as well as through his solicitation of funds from his supporters: (a) HIC received approximately $82 million from Hamilton Opportunity Fund;[345] (b) HIC received approximately $22 million from ACA;[346] (c) HIC received $50 million from G Club International Limited;[347] (d) HIC received $200,000 from Lexington;[348] (e) HIC also received more than $8.8 million from HAA Group Pty Ltd., a company that Ya Li testified that she owned and set up pursuant to instructions from the Debtor;[349] and (f) HCC received approximately $585,000 from ACA.

---

[340] *Id.* at 86:17-87:5.
[341] Trustee Ex. 99 (GXC262) at 1.
[342] Trustee Ex. 100 (GXC263) at 1, 3.
[343] *See, e.g.*, Trustee Ex. 101 (GXZ9) at 101-105, 118, 124.
[344] Trustee Ex. 73, Ex. 6 of Ya Li Deposition.
[345] Trustee Ex. 136 (Lomas HIC Transfer Summary), at 4 (Row 2).
[346] *Id.*, at 4 (Row 5).
[347] *Id.*, at 4 (Row 3).
[348] *Id.*, at 4 (Row 15).
[349] Trustee Ex. 136 (Lomas HIC Transfer Summary), at 4 (Rows 1, 7).

89. The Debtor directed transfers between and among the Himalaya Entities: (a) HIC transferred more than $101 million to HIFG;[350] (b) HIC transferred approximately $260 million to HIR;[351] (c) HIC transferred more than $215,000 to HCCP;[352] (d) HIFG transferred more than $56 million to HIR;[353] (e) HIFG approximately $356,000 to HIC; [354] (f) and HIR transferred $35 million to HIC. [355]

90. The Debtor used the funds of the Himalaya Entities to transfer money to or for the benefit of companies that he controlled: (a) HIFG transferred $37 million to Zeisler & Zeisler PC, attorneys for HK USA[356]; (b) HIC transferred more than $175 million to Hamilton Opportunity Fund[357]; (c) HIC transferred more than $50 million to Hamilton Investment Management Ltd[358]; (d) HIC transferred approximately $47 million to Hamilton Capital[359]; (e) HIC transferred $15 million to G Club International Limited[360]; and (f) HIC transferred more than $3 million to G Fashion International Limited.[361]

91. The Debtor also used the funds of the Himalaya Companies to make transfers for the benefit of Mileson and Mileson's associates: (a) HIC transferred approximately $5.2 million to GCP Investment for the purchase of a McLaren F1 vehicle for Mileson[362]; (b) HIC transferred approximately $4 million to RM Auctions Deutschland GmbH for the purchase of a Ferrari F1

---

350 *Id.*, at 6 (Row 3).
351 *Id.* (Row 1).
352 *Id* (Row 19).
353 Trustee Ex. 137 (Lomas HIFG Transfer Summary), at 3 (Row 1).
354 *Id.*, at 3 (Row 5).
355 Trustee Ex. 136 (Lomas HIC Transfer Summary), at 4 (Row 4).
356 *See* Main Case ECF 299.
357 *Id.*, at 7 (Row 2).
358 *Id.*, at 7 (Row 5).
359 *Id.*, at 7 (Row 6).
360 Trustee Ex. 136 (Lomas HIC Transfer Summary), at 7 (Row 10).
361 *Id.*, at 7 (Row 14).
362 Trustee Ex. 136 (Lomas HIC Transfer Summary), at 7 (Row 11).

vehicle for Mileson[363]; (c) HIC transferred approximately $454,000 to Andrew Law[364]; (d) HIC transferred more than $3.4 million to Scarabaeus Wealth Management AG ("Scarabaeus")[365]; (e) HIC transferred approximately $52,000 to Farrant Group Limited, which is described as "Mileson's PR firm"[366]; and (f) HIC transferred more than $190,000 to Cameron Smee and Roger Smee,[367] described as "Mileson's friend[s]." [368]

92. On or about September 23, 2022, Je contacted Bo Collins, CEO of Mercantile Bank, and sought to effectuate a wire transfer of no less than $46 million as a purported redemption to an unnamed VIP client of the Himalaya Exchange, which Je later revealed was ACA.[369] Twice Je emphasized to Mercantile that the transfer needed to happen "today or it is meaningless."[370] According to a purported redemption form dated September 23, 2022, the ACA account to receive the $46 million transfer was held at First Abu Dhabi Bank in the UAE. [371]

**H. Debtor's Invocation of Fifth Amendment**

93. The Debtor has asserted the Fifth Amendment when asked: (i) whether he was familiar with each of the Himalaya Entities; (ii) to describe his relationship with the Himalaya Entities; (iii) whether he controlled the Himalaya Entities; and (iv) whether he beneficially owned the Himalaya Entities.[372]

---

363 *Id.*, at 7 (Row 12).
364 Trustee Ex. 107, (GXWA68).
365 Trustee Ex. 136 (Lomas HIC Transfer Summary), at 7 (Row 13).
366 Trustee Ex. 107, (GXWA68).
367 Trustee Ex. 136 (Lomas HIC Transfer Summary), at 7 (Row 4).
368 Trustee Ex. 707 (GXWA68).
369 Trustee Ex. 473 (Mercantile-BKR-00073081).
370 Trustee Ex. 474 (Mercantile-BKR-00073154).
371 Trustee Ex. 475 (Mercantile-BKR-00057456).
372 Trustee Ex. 52, Debtor Responses to Written Questions ¶¶ 615-634.

Dated: August 7, 2026
New York, New York

LUC A. DESPINS, CHAPTER 11 TRUSTEE

By: /s/ *Nicholas A. Bassett*

Nicholas A. Bassett (admitted *pro hac vice*)
PAUL HASTINGS LLP
2050 M Street NW
Washington, D.C., 20036
(202) 551-1902
nicholasbassett@paulhastings.com

*and*

Douglass E. Barron (admitted *pro hac vice*)
G. Alexander Bongartz (admitted *pro hac vice*)
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
(212) 318-6079
douglassbarron@paulhastings.com
alexbongartz@paulhastings.com

*and*

Douglas S. Skalka (ct00616)
Patrick R. Linsey (ct29437)
NEUBERT, PEPE & MONTEITH, P.C.
195 Church Street, 13th Floor
New Haven, Connecticut 06510
(203) 781-2847
dskalka@npmlaw.com
plinsey@npmlaw.com

*Counsel for the Chapter 11 Trustee*